Simon and Irene Harris v. Commissioner.
Harris v. Commissioner
Docket No. 83869.
United States Tax Court
T.C. Memo 1961-35; 1961 Tax Ct. Memo LEXIS 312; 20 T.C.M. (CCH) 174; T.C.M. (RIA) 61035; February 14, 1961
*312 Simon and Irene Harris, pro se, 4806 Sullivan Way, Santa Rosa, Calif. Cyrus A. Johnson, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Respondent has determined deficiencies in the income tax of petitioners in the years and respective amounts which follow: Year
Deficiency
1953
$ 25.39
1955
473.00
1956
573.16
1957
579.36
The only issue for decision is whether for the years 1955, 1956, and 1957 the respondent erred in allowing amortization of the amount of $5,400 as the purchase price paid by petitioners for a covenant not to compete in a contract for the purchase of a business executed by petitioners instead of the amount of $19,000. Findings of Fact Stipulated facts are found as stipulated. Petitioners are husband and wife residing in Santa Rosa, California. For each of the years at issue they filed their joint income tax returns with the district director at San Francisco, California. For about 35 years petitioners have been engaged in a variety of businesses for themselves and are generally acquainted with business practices and agreements dealing therewith. On August 18, 1954, petitioners *313 for the first time in their experience entered into the photofinishing business in Santa Rosa. Their entry into the business was effectuated by an agreement of lease and purchase executed by them on that date. The sellers had operated such a business at a certain address in Santa Rosa for an undisclosed period prior thereto. The sellers owned certain fixed assets consisting of photofinishing machinery, which was there located and which, by the agreement, was leased to petitioners. Other provisions of the agreement were as follows: 4. First Parties [sellers] do by these presents transfer and convey to Second Party [Simon Harris] the right to the good will and patronage of certain accounts heretofore serviced by First Parties listed by name and address on the exhibit attached hereto marked Exhibit One. 5. First Parties shall retain the good will and right to service certain accounts heretofore serviced by them, the names and addresses of which are on the list attached hereto and marked Exhibit Two. * * *
8. In consideration of the transfer of the good will of said accounts, as aforesaid, Second Party agrees to pay to First Parties the sum of Nine Thousand Five Hundred *314 ($9,500.00) Dollars, payable $4,500.00 cash upon the execution of this agreement, receipt whereof is hereby acknowledged, and the additional sum of $5,000.00 on October 1, 1954. * * *
18. The Parties hereto agree that they will, so far as is humanly possible, carry out the arrangement herein outlined in such fashion that neither will interfere with the operation of the other. * * *
The photofinishing business purchased by the petitioners processed, developed, and printed photographs for so-called wholesale accounts which accounts consisted of drug stores, grocery stores, newsstands, and resorts. Petitioners, by automobile, would pick up the rolls of films previously deposited at these wholesale accounts by individual persons. Upon completion of the processing of the films, the pictures would again be returned to the wholesale accounts whereupon they would be distributed to the individual customers. Petitioners received their remuneration from the wholesale accounts. In areas approximately 75 to 100 miles distant from Santa Rosa, the wholesale accounts would mail the films to petitioners for processing. Upon completion of this processing they would again be returned by *315 mail to the wholesale accounts. The customer list purchased by petitioners in the lease and agreement of August 18, 1954, contained the names of 38 accounts. By this same agreement the sellers retained the right to service 58 specific accounts. As of November 1, 1954, petitioners entered into a second agreement whereby they purchased the remainder of the customer accounts and good will of the photofinishing business from the sellers. This agreement confirmed the leasing of the physical facilities of the photofinishing business on a monthly basis and specifically provided as follows: 4. Seller hereby transfers and conveys to Buyer [Simon Harris] the right to and the good will and patronage of certain accounts heretofore serviced by Seller, listed by name and address on the exhibit attached hereto marked "Exhibit One." The said transfer shall continue for a period commencing November 1, 1954, and continuing for four and one-half (4 1/2) years from November 1, 1954. Seller also hereby extends the time for the transfer of the good will and accounts listed in that certain agreement dated August 18, 1954, between A. N. WAGAR and SHIRLEY CAMBRA, as First Parties, and SIMON HARRIS, *316 as Second Party, hereinafter referred to as "Agreement dated August 18, 1954", for a period of four and one-half (4 1/2) years from November 1, 1954. 5. In consideration of the transfer of the good will of said accounts as aforesaid, Buyer agrees to pay Seller the sum of $9,500.00, payable as follows: $4,000.00 upon the execution of this agreement; the balance of $5,500.00 in four monthly installments of $1,375.00 each, without interest, the first of which monthly installments shall be paid on December 1, 1954. * * *
8. Buyers shall have the right to use the address of said premises and desk and file space and the right to receive not over ten (10) customers per day through the front door, and a suitable space for a sign advertising Buyer's business, all during the term of the within Agreement, at the most southerly end of the front of the premises. 9. Seller guarantees that the accounts transferred to Buyer herein, and the accounts transferred to Buyer under the aforesaid Agreement dated August 18, 1954, will continue their patronage to Buyer for a period of sixty (60) days from November 1, 1954, as to all such accounts outside a radius of five (5) miles from the City *317 Limits of Santa Rosa, California, and for thirty (30) days as to such accounts in the said City of Santa Rosa, and within a radius of five (5) miles from said City of Santa Rosa, and in case of a loss of a guaranteed account within said time limits, then Seller shall have sixty (60) days and thirty (30) days, respectively, to replace an amount of business equal to that lost, and for failure to so replace said business Seller shall pay Buyer the value of such business which Seller may so fail to replace, which said value shall be determined as the percentage of the account Seller shall so fail to replace to the total business done for a period of one year from November 1, 1954 by all the accounts sold hereunder and applying such percentage to the total purchase price of $9,500.00. * * *
16. Seller expressly agrees that for a period of four and one-half (4 1/2) years from date hereof, the Seller will not solicit or service said accounts sold under this Agreement or that certain Agreement dated August 18, 1954, or any other accounts in the Counties of Sonoma, Marin, Napa, Mendocino and Solano, either directly or indirectly, as employer, employee, salesman, agent or in any other *318 capacity whatsoever, nor endeavor to or in any manner influence any accounts in the aforesaid Counties to patronize anyone other than Buyer, except that Seller may conduct a strictly mail order photo finishing business, where no pick-ups are made, except as to drug stores and variety stores in the above Counties which are hereby reserved to Seller, under the name of "Pep-Tone", and Seller, or his employees, may solicit, acquire and service such mail-order "Pep-Tone" accounts. Provided further, Seller may solicit accounts in the aforementioned Counties as a salesman for Buyer, and if Buyer accepts any accounts so solicited by Seller, Buyer agrees to pay to Seller for such accounts so solicited a commission of fifteen (15) percent of the gross black and white photo finishing and five (5) percent of the net color photo finishing and five (5) percent of the net sales of film and supplies, for a period of six (6) months from the date such account or accounts solicited become active. Payments for such commission shall be made on the 15th day of each month. In the event Buyer does not accept accounts so solicited by Seller, Seller may place such accounts elsewhere. * * *
No value was *319 assigned by the Agreement of November 1, 1954, to the provision for the covenant not to compete. The list of "accounts" referred to in the latter contract contained 70 names of which 24 were repeated from the list of accounts attached to the first contract. On August 14, 1957, in a suit brought by petitioners in the Superior Court for the County of Sonoma, California, against the sellers, seeking to enforce compliance with the covenant not to compete incorporated in the second contract, that court issued its order enjoining the violation of that provision by the sellers and in its findings of fact made the following determination: The agreements had for their general purpose the sale by defendants to plaintiff of certain photo finishing accounts, together with the good will thereof; the joint use between the parties of certain photo finishing equipment, materials and premises; the guarantee of continued patronage as to certain accounts; and the abstention by defendants from competing with plaintiff for a given period of time in certain counties and with regard to certain accounts and types of business. * * *
Petitioners have continued to carry on the photo finishing business *320 at 211 "B" Street, Santa Rosa, California, which was the same location of the business when owned by the sellers. In entering into both contracts here involved petitioners' primary purpose was to acquire the customer lists of the sellers. The amount paid by petitioners for the express covenant not to compete contained in the contract of November 1, 1954, did not exceed $5,400. Opinion There is no dispute between the parties concerning the law applicable to the facts presented. Petitioners simply contend that they have paid the sellers of the photofinishing business here involved $19,000 in two equal installments for the sellers' covenant not to compete with petitioners for a fixed period within specified areas and seek to amortize that amount over the life of the covenant. Respondent insists that in entering into the two contracts, parts of which are set forth in the Findings of Fact, petitioners were purchasing good will represented by certain lists of customers attached to each contract and that the covenant not to compete included in the latter contract was merely incidental to the customer lists. He has therefore allocated $5,400 of the total $19,000 paid upon both contracts *321 as the amount expended for the covenant and permits the amortization of that amount over the life of the covenant. Our findings dispose of the issue. There is no evidence in the record upon which a different amount than $5,400 can be attributed to the covenant of the sellers not to compete. The burden is upon petitioners to establish by evidence any other amount. This they have failed to do. Read together and taken as a whole the contracts clearly evidence a sale of the good will of the sellers represented by customer lists. Inherent in good will is the right to its use by its acquirer without the interference of the one from whom it is acquired. Petitioners' rights to exploit these customer lists exclusive of the seller were established by the sale, and the covenant not to compete was surplusage. It is extremely doubtful therefore that the covenant has any real value whatsoever. However, because respondent does not claim petitioner paid nothing for it, we leave the parties where we find them. Decision will be entered for the respondent.